UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Carol Carter, Destiny Armelli, | ) | |
| Mary Heuser, Carrie Hejduk, | ) | |
| Judith Lauber, Dawn Melvin, | ) | Civil Action No. _____ |
| Jeannette McDaniel, Melanie Moyers, | ) | |
| Stephanie Sir Louis, Jennifer Welz, and | ) | |
| Jenny Zellers, on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CLASS ACTION |
| v. | ) | |
| | ) | |
| PJS of Parma, Inc. d/b/a | ) | |
| Stancato's Italian Restaurant and | ) | |
| Lorraine Stancato, | ) | |
| | ) | |
| Defendants. | ) | |

**COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**

**Demand for Jury Trial**

Plaintiffs Carol Carter, Destiny Armelli, Mary Heuser, Carrie Hejduk, Judith Lauber, Dawn Melvin, Jeannette McDaniel, Melanie Moyers, Stephanie Sir Louis, Jennifer Welz, and Jenny Zellers, individually and on behalf of all others similarly situated, allege as follows for their Collective Action and Class Action Complaint against Defendants PJS of Parma, Inc. d/b/a Stancato's Italian Restaurant ("Stancato's Italian Restaurant") and Lorraine Stancato ("Mrs. Stancato") (collectively "Defendants"):

1. Plaintiffs bring this hybrid collective/class action Complaint because of Defendants' numerous violations of federal and state minimum wage laws regarding tips and tip credits (as well as state common law claims regarding tips) while Plaintiffs and similarly situated employees worked as servers for Defendants in their dining and banquet rooms, and at off-site catering events.

2. As set forth in detail below, Defendants paid their servers working in the dining room ("Dining Room Servers") with a tip credit (for example, $4.05 per hour for 2015) (the "Tipped Employees Minimum Wage"). Defendants, however, engaged in illegal tip pooling and tip sharing arrangements, for example, by requiring Dining Room Servers to share a percentage of their tips with the house or with employees who do not customarily and regularly receive tips, such as dishwashers, owners, and management. Furthermore, Mrs. Stancato would exclaim after lunch that Dining Room Servers were making too much money, or that the amount of tips they were receiving was unreasonable. Defendants would then illegally withhold a portion of Dining Room Servers' tip share. As a result, Defendants were not permitted to apply a tip credit to its employees' wages, and those employees are thus entitled to the difference between the Tipped Employees Minimum Wage and the normal minimum wage (for example $8.10 per hour for 2015) ("Non-Tipped Employees Minimum Wage") as damages in addition to liquidated damages, attorney's fees and costs, as well as all unpaid tips.

3. Prior to mid-January 2014, Defendants similarly paid their servers working in their banquet rooms and at off-site catering events ("Banquet Servers") the Tipped Employees Minimum Wage. Defendants then added an additional sum to the Banquet Servers paychecks as "Banquet Tips" to bring their total pay to a fixed sum (for example, $10.00 per hour).

Defendants, however, were prohibited from applying a tip credit because the Banquet Servers did not receive the entire tip left by the customer and because of the illegal tip pooling and sharing set forth above.  As a result, those employees are entitled to the difference between the Tipped Employees Minimum Wage and the Non-Tipped Employees Minimum Wage as damages in addition to liquidated damages, attorney's fees and costs, as well as all unpaid tips.

4. Defendants changed their procedures and ceased applying a tip credit to their Banquet Servers' wages beginning in mid-January 2014.  Defendants, however, still engaged in two illegal tip practices by (1) keeping a portion of the tips for themselves, and (2) convincing customers to lower the amount of tip that they had already given to the Banquet Servers.  The Banquet Servers are thus entitled as damages the unpaid original tips plus punitive damages, attorney's fees and costs, and any other compensatory damages.

## JURISDICTION AND VENUE

5. This Court has federal-question subject matter jurisdiction over the claims raised in this Complaint pursuant to the Fair Labor Standards Act, 29 U.S.C. Sections 201, *et seq*.

6. Venue is proper in the Northern District of Ohio because one or more of the Defendants resides within that district and separately because a substantial part of the events giving rise to Plaintiffs' claims occurred in that district.

7. This Court has supplemental jurisdiction over Plaintiffs' and similarly situated employees' state-law claims pursuant to 28 U.S.C. § 1367(a).

## THE PLAINTIFFS

8. Plaintiff Carol Carter ("Carter") worked for Defendants from approximately September 11, 2014 through April 9, 2015 as a Banquet Server.  Carter also worked on Easter

Sunday 2015 (April 5, 2015) and was paid with a tip credit (hereinafter "Easter Sunday Server"). Carter was formerly known as Carol Carrington.

9. Plaintiff Destiny Armelli worked for Defendants from approximately June 2009 through January 2015 as a Dining Room Server and a Banquet Server, as well as holding other positions with Stancato's Italian Restaurant.

10. Plaintiff Mary Heuser worked for Defendants from approximately January 2013 through December 2013 as a Banquet Server.  Mary Heuser was formerly known as Mary Sir Louis.

11. Plaintiff Carrie Hejduk worked for Defendants from approximately October 2013 through May 2014 as a Banquet Server, as well as holding other positions with Stancato's Italian Restaurant.

12. Plaintiff Judith Lauber worked for Defendants from approximately October 2012 through December 2013 as a Banquet Server.

13. Plaintiff Dawn Melvin worked for Defendants from approximately May 16, 2014 through October 8, 2014 as a Dining Room Server and a Banquet Server.

14. Plaintiff Jeannette McDaniel worked for Defendants from approximately May 2014 through March 2015 as a Dining Room Server, as well as holding other positions with Stancato's Italian Restaurant.

15. Plaintiff Melanie Moyers worked for Defendants from approximately November 2014 through April 5, 2015 as a Banquet Server and an Easter Server.

16. Plaintiff Stephanie Sir Louis worked for Defendants from approximately May 2013 through December 2013 as a Banquet Server.

17. Plaintiff Jennifer Welz worked for Defendants from approximately January 2014 through April 2015 as a Dining Room Server and a Banquet Server, as well as holding other positions with Stancato's Italian Restaurant.

18. Plaintiff Jenny Zellers worked for Defendants from approximately May 2014 through November 22, 2014 a Dining Room Server and once as a Banquet Server.

## THE DEFENDANTS

19. Defendants do business as Stancato's Italian Restaurant, located at 7380 State Road, Parma, OH 44134.

20. PJS of Parma, Inc. is an Ohio Corporation with its principal place of business in Parma, Ohio.

21. Mrs. Stancato had an economic interest in not paying Plaintiffs and similarly situated employees minimum wage.

22. Mrs. Stancato is an owner and manager of Stancato's Italian Restaurant.

23. Mrs. Stancato acted directly or indirectly in the interest of Stancato's Italian Restaurant in relation to Plaintiff and similarly situated employees.

24. Mrs. Stancato had operational control of Defendant Stancato's Italian Restaurant.

25. Mrs. Stancato was involved in the day-to-day operation of Defendant Stancato's Italian Restaurant, had direct responsibility for the supervision of Plaintiffs and similarly situated employees, and was directly involved in making decisions concerning the payment (and non-payment) of wages to Plaintiffs and similarly situated employees.

## ILLEGAL TIP POOLING AND SHARING FOR DINING ROOM SERVERS AND EASTER SUNDAY SERVERS

26. Defendants paid the Tipped Employees Minimum Wage to Plaintiffs Destiny Armelli, Dawn Melvin, Jeannette McDaniel, Jennifer Welz, Jenny Zellers and similarly situated Dining Room Servers.

27. Defendants paid the Tipped Employees Minimum Wage to Plaintiffs Carol Carter, Melanie Moyers and similarly situated Easter Sunday Servers for work performed on Easter Sunday 2015.

28. As a result of Defendants' unlawful tip sharing and pooling policy, as set forth below, Plaintiffs Destiny Armelli, Dawn Melvin, Jeannette McDaniel, Jennifer Welz, Jenny Zellers, Carol Carter, Melanie Moyers and the other Dining Room Servers and Easter Sunday Servers were entitled to receive the *Non-Tipped* Employees Minimum Wage plus tips for every hour of work that they performed for Defendants.

### Illegal Tip Sharing

29. Plaintiffs Destiny Armelli, Dawn Melvin, Jeannette McDaniel, Jennifer Welz, Jenny Zellers, Carol Carter, Melanie Moyers, and similarly situated Dining Room Servers and Easter Sunday Servers were required to share a percentage of their tips with employees who do not customarily and regularly receive tips, such as dishwashers and management.

30. The total tip-out amount changed over time but was usually 4%.

31. Defendants' employee handbook specifically requires a 1% tip-out of total sales to "Dish Machine Operators" or "DMO's," which is defined in the handbook as being "responsible for maintaining our restaurants plates, glasses, stemware, flatware etc…  They are the key to

6

providing our restaurants different departments with all the tools they'll need to do their job efficiently. Our DMO's are also responsible for keeping the restaurant organized and clean."

32. Dish Machine Operators primary duty is dishwashing.

33. Dish Machine Operators do not customarily and regularly receive tips.

34. Dishwashers do not customarily and regularly receive tips.

35. Defendants' employee handbook also specifically requires a 1% tip-out of total sales to the "Front Desk," which is defined in the handbook as being "responsible for the flow of the dining room; they will be in charge of greeting guests, checking in guests, quote times and deciding which tables to seat. Other duties include seating guests, helping clear and reset tables, pack guests food to-go, refill waters & deliver entrees."

36. The Front Desk employees' primary duty was being a hostesses.

37. The Dish Machine Operators and Front Desk, however, did not actually receive the tip share as tips. Rather, the house retained the money for general business purposes.

38. Defendants admitted that the Front Desk and Dish Machine Operators' tip shares were used to pay their hourly wages, which would be a general business purposes.

39. Retaining tips for general business purposes or to pay hourly wages of other employees does not constitute a valid tip sharing or pooling under the Department of Labor's regulations and federal and state law.

**Additional Illegal Tip Pooling During Lunches**

40. During lunch, the Dining Room Servers were required to pool their tips by placing their tips in a fish bowl.

7

41. After the above-mentioned tip-out amounts were withdrawn, the tips were supposed to be divided equally between the Dining Room Servers working that shift. Instead, Defendants would often take a portion of the tips. For example, Mrs. Stancato would exclaim that Dining Room Servers were making too much money, or that the amount of tips they were receiving was unreasonable. Defendants would then illegally withhold a portion of Dining Room Servers' tip share.

42. Defendants would use the tip money in the tip pool for other improper purposes, as well. For example, if the cashier drawer was short, Defendants would withhold a portion of the Dining Room Servers tips and then place those tips in the cash register, even though the cash register was run by employees completely separate from the Dining Room Servers. Additionally, on numerous occasions, a portion of the money in the tip pool would be used to pay the hourly wages of non-Dining Room Servers, such as Defendants' office workers that would help during the lunch rush. Using tips for such purposes does not constitute a valid tip sharing or pooling under the Department of Labor's regulations and federal and state law.

**Additional Illegal Tip Pooling During Easter Sunday**

43. In addition to the illegal purported tip-outs to Dish Machine Operators and Front Desk, the Easter Sunday Servers tips were pooled with salaried managers at Stancato's Italian Restaurant.

44. Requiring employees to pool tips with management is an illegal tip pool under the Department of Labor's regulations and federal and state law.

## ILLEGAL TIP POOLING AND SHARING FOR BANQUET SERVERS
## PRIOR TO MID-JANUARY 2014

45. Prior to mid-January 2014, Defendants paid Plaintiffs Destiny Armelli, Carrie Hejduk, Mary Heuser, Judith Lauber, Stephanie Sir Louis and similarly situated Banquet Servers the Tipped Employees Minimum Wage on their paystubs.

46. Defendants then added an additional sum to the Banquet Servers paychecks as "Banquet Tips" to bring their total pay to a fixed sum (for example, $10.00 per hour).

47. Defendants charged its banquet customers either a mandatory gratuity or a mandatory service charge.

48. Regardless of how Defendants classified the fee to its customers, pursuant to 29 C.F.R. Section 531.55, compulsory charges for service imposed on a customer cannot be counted as a tip received when applying a tip credit pursuant to the the provisions of Section 3(m) and Section 3(t) of the Fair Labor Standards Act.

49. Defendants were prohibited from applying a tip credit because the Banquet Servers did not receive the entire tip left by the customer and because of the illegal tip pooling and sharing set forth above.

50. As a result, Plaintiffs Destiny Armelli, Carrie Hejduk, Mary Heuser, Judith Lauber, Stephanie Sir Louis and similarly situated Banquet Servers are entitled to the difference between the Tipped Employees Minimum Wage and the Non-Tipped Employees Minimum Wage as damages in addition to liquidated damages, attorney's fees and costs, as well as all unpaid tips.

51. Upon information and belief, Defendants were advised to change this practice.

52. Defendants changed their procedures and ceased applying a tip credit to their Banquet Servers' wages beginning in mid-January 2014.

## ILLEGAL INTERFERENCE AND CONVERSION OF TIPS OF BANQUET SERVERS

53. Defendants have wrongfully converted and interfered with tips belonging to Plaintiffs and those similarly situated.

54. In addition to any mandatory gratuity or service charge, Defendants' customers would leave additional tips for the Banquet Servers, which would be subject to tip pooling.

55. Defendants would wrongfully convert the tips by keeping a portion of the tips for themselves.  In so doing, Defendants would use various excuses for taking a portion of the tips, such as having to remove tape from the walls, or as punishment for the Banquet Servers purportedly not cleaning properly or placing silverware or coffee cups correctly.

56. In addition to any mandatory gratuity or service charge, Defendants' customers would leave additional tips for the Banquet Servers, which would be subject to tip pooling.

57. Whenever Defendants considered an additional tip to be excessive, Defendants required Banquet Room Servers to retrieve a manager to inform that customer that Banquet Servers are paid an hourly rate that is above minimum wage and above what normal servers earns and, thus, only "modest" tipping was acceptable.

58. After the manager would speak with the customer, Defendants would then either completely eliminate or substantially reduce the tip that the customer provided.

59. If, after speaking with Defendants, the customer was insistent upon leaving a tip above "modest," the managers would allow it and then enter the tip amount into Defendants' computer system.

60. Per company policy, Defendants would then call those customers the next day to follow-up and discuss the service.

61. Upon information and belief, when Defendants spoke with the customers, Defendants would attempt to persuade the customers to renege on their tip or substantially reduce the amount.

62. When Plaintiffs and other Banquet Servers would come to pick-up their tips the following day, Defendants would tell them that the customer "changed their mind" and decided on a post-hoc basis either not to tip at all or to substantially reduce the tip amount that was initially left.

63. Upon information and belief, however, the customers either did not change their tip at all or they reduced it by an insignificant amount, and Defendants retained the tip proceeds for themselves.

64. In or about February 2015, for example, Plaintiff Carter worked a specific event at Defendants, and the customer left a tip of over $50 per server.

65. Per policy, Carter went to retrieve a manager, but the manager was busy.

66. After the customer had left, Defendants wrote-up Carter for not following policy.

67. Although the customer left Carter and the other Banquet Servers working with her a tip of over $50 per server, Defendants never provided them any of the tip money.

68. Upon information and belief, Defendants kept the tip proceeds for themselves.

11

69. As a Banquet Server, Plaintiff would regularly train Defendants' new Banquet Server hires ("new-hires")

70. Defendants' policy with respect to new-hires was to not allow them to receive tips for the first five banquet events they worked.

71. Notwithstanding this policy, whenever Carter would train a new-hire, the amount of tips she would receive were less than the amount of tips she would have received had the divvying of tips not included the new-hire.

72. When Carter asked Defendants where the remainder of the tip money went, Defendants responded that it was divided between the Banquet Servers and new-hires.

73. When Carter asked the new-hires if they received a tip from the event, however, the new-hires would respond in the negative.

74. Upon information and belief, Defendants kept the remaining tip proceeds for themselves.

## COLLECTIVE ACTION ALLEGATIONS

75. All eleven named Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to the Fair Labor Standards Act and Ohio Revised Code Section 4111.14(K).

76. Individuals similarly situated to Plaintiffs Dawn Melvin, Jeannette McDaniel, Jennifer Welz, Jenny Zellers, Carol Carter, and Melanie Moyers include all Dining Room Servers or Easter Sunday Servers who worked for Defendants for any period of time during the last three years for whom a tip credit was applied to their wages.

77. Individuals similarly situated to Plaintiffs Carrie Hejduk, Mary Heuser, Judith Lauber, and Stephanie Sir Louis include all Banquet Servers who worked for Defendants for any period of time from August 2012 through January 2014.

78. Individuals similar situated to Plaintiff Destiny Armelli include those individuals who were both (1) Dining Room Servers or Easter Sunday Servers who worked for Defendants for any period of time during the last three years for whom a tip credit was applied to their wages and (2) Banquet Servers who worked for Defendants for any period of time from August 2012 through January 2014.

79. This Court should permit this collective action to proceed because other similarly situated individuals employed by Defendants have suffered the same wrongdoing, and the factual and legal scenarios for Plaintiffs and the opt-in plaintiffs are similar such that their claims should be heard in one action.

80. Additionally, permitting this action to proceed as a collective action promotes judicial efficiency.

**CLASS ACTION ALLEGATIONS**

81. Plaintiffs Carol Carter, Destiny Armelli, Carrie Hejduk, Jeannette McDaniel, Dawn Melvin, Melanie Moyers, and Jennifer Welz were all Banquet Servers for a period of time after January 2014 and bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

82. The proposed class is defined as all Banquet Servers who worked for Defendants for any period of time since January 2014.

83. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

84. The members of the Class are so numerous that joinder is impractical. The Class consists of many dozens of members, the specific identities of whom are within the knowledge of, and can be ascertained only by resort to, Defendants' records.

85. The claims of the representative Plaintiffs are typical of the claims of the Class because Defendants kept or interfered with tips properly due to the representative Plaintiffs and all Class members. The representative Plaintiffs, like all Class members, have been damaged by Defendants' misconduct, in that they have been, and will continue to be, deprived of their property. Furthermore, the factual basis of Defendants' misconduct is common to all Class members, and represents a common thread of unlawful conduct resulting in the same injuries to all members of the Class.

86. There are numerous questions of law and fact common to the Class, and those common questions predominate over any questions affecting only individual Class members.

87. Among the questions of law and fact common to the Class are whether Defendants:

  a. unlawfully permitted management and other employees who do not customarily and regularly receive tips, including, but not limited to, dishwashers, management, and the house, to participate in the Class's tip pooling;

  b. improperly interfered with the Class members' tips;

  c. unlawfully retained portions of the Class members' tips; and

  d. implemented and executed tip policies and practices that are unlawful.

88. Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

89. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel.

90. Plaintiffs and their counsel are adequate representatives and will fairly and adequately protect the interests of the Class.

91. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses, and Defendants' misconduct will proceed without remedy.

92. Even if Class members themselves could afford such individual litigation, this Court may become immersed in numerous lawsuits with substantially similar facts and legal issues with relatively nominal damages.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication and comprehensive supervision by a single court.

## COUNT I
## FAILURE TO PAY NON-TIPPED EMPLOYEE MINIMUM WAGES

93. Plaintiffs re-allege each allegation set forth in paragraphs 1-92 above.

94. Defendants are Plaintiffs' and similarly situated employees' employer.

95. Defendants engage in interstate commerce.

96. Defendant Stancato's Italian Restaurant's revenues exceed $297,000 per annum.

97. Defendants are required to comply with the minimum wage requirements set forth in the Ohio Constitution, the Ohio Revised Code, and the Fair Labor Standards Act, 29 U.S.C. Sections 201, *et seq*.

98. Defendants have violated Section 34a, Article II, of the Ohio Constitution, Ohio Revised Code Section 4111.14, and the Fair Labor Standards Act by permitting the use of unlawful tip pooling that includes sharing tips with management and other employees who do not customarily and regularly receive tips.

99. Defendants' conduct was willful.

100. Plaintiffs and similarly situated employees have been damaged by Defendants' conduct and are entitled to the difference between the Tipped Employee Minimum Wage and the Non-Tipped Employee Minimum Wage in addition to all tips.

101. Plaintiffs and similarly situated employees are entitled to two times liquidated damages under Ohio Revised Code Section 4111.14(J) or in the alternative one times liquidated damages under the Fair Labor Standards Act.

102. Defendants are liable for the costs and reasonable attorney's fees of Plaintiffs and similarly situated employees pursuant to the Fair Labor Standards Act and Section 34(a) of Article II of the Ohio Constitution.

103. Plaintiffs have consented in writing to become party plaintiffs in this lawsuit. Their consents are attached hereto as Exhibit A.

## COUNT II
## CONVERSION

104. Plaintiffs re-allege each allegation set forth in paragraphs 1-103 above.

105. Defendants exercised dominion and control over the tips and gratuities that customers left for Plaintiffs and the members of the Class.

106. The tips and gratuities that customers left for Plaintiffs and the members of the Class were Plaintiffs' and the Class members' property, and Plaintiffs and the members of the Class had ownership rights and the right to possess the tips.

107. Defendants retained the tips and gratuities that were Plaintiffs' and the Class members' property, thereby wrongfully exercising dominion and control over the tips and gratuities to the exclusion of the rights of Plaintiffs and the members of the Class.

108. Plaintiffs and the members of the Class have been damaged by Defendants' conversion.

109. Defendants' conversion is the cause of Plaintiffs' and the Class members' damages.

110. Defendants acted with actual malice, entitling Plaintiffs and the members of the Class to punitive damages and their attorney's fees and costs.

## COUNT III
## UNJUST ENRICHMENT

111. Plaintiffs re-allege each allegation set forth in paragraphs 1-110 above.

112. Plaintiffs and the members of the Class conferred a benefit upon Defendants, and gave the benefit with Defendants' knowledge, by giving excellent service to Defendants' customers, causing those customers to leave tips and gratuities for Plaintiffs and the members of the Class and creating repeat business for Defendants.

113. Retention of the tips and gratuities by Defendants is unjust under the circumstances.

114. Plaintiffs and the members of the Class have been damaged by Defendants' unjust enrichment.

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

115. Plaintiffs re-allege each allegation set forth in paragraphs 1-114 above.

116. Plaintiffs and the members of the Class entered into a business relationship with Defendants' customers by virtue of earning tips and gratuities from customers in exchange for providing excellent service.

117. Defendants knew that Plaintiffs and the members of the Class had a business relationship with Defendants' customers.

118. Defendants knew that Plaintiffs and the members of the Class would receive tips and gratuities from its customers in exchange for their providing excellent service.

119. Defendants intentionally interfered with that relationship, without privilege to do so, by dissuading customers from leaving any tip or convincing them to leave a substantially

lower tip, thereby causing a breach or termination of the relationship between the customers and Plaintiffs and the members of the Class.

120. As a result of Defendants' intentional interference, Plaintiffs and the members of the Class failed to receive the tips and gratuities to which they were entitled, thereby suffering damages.

121. Defendants acted with actual malice, entitling Plaintiffs and the members of the Class to punitive damages and their attorney's fees and costs.

WHEREFORE, Plaintiffs and all other similarly situated employees request that this Court certify an opt-in collective action under Ohio Revised Code Section 4111.14(K) and the Fair Labor Standards Act, certify a class action under Rule 23 of the Federal Rule of Civil Procedure and demand judgment against Defendants for their unpaid minimum wages, liquidated damages, non-economic damages such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, any other compensatory damages, prejudgment interest at the statutory rate, post-judgment interest, punitive damages, attorney's fees and costs, and all other relief to which they and the classes are entitled.

JURY TRIAL DEMANDED.

Respectfully submitted,

/s/ Stephan I. Voudris
Stephan I. Voudris, Esq.
Supreme Court No. 0055795
Alix Noureddine, Esq.
Supreme Court No. 0092484
Voudris Law LLC
8401 Chagrin Road, Suite 8
Chagrin Falls, OH 44023
svoudris@voudrislaw.com
anoureddine@voudrislaw.com
440-543-0670
440-543-0721 (fax)

Counsel for Plaintiffs
and others similarly situated