**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Carol Carter, et al., ) | CASE NO. 1:15 CV 1545 |
| ) | |
| Plaintiffs, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| vs. ) | |
| ) | |
| PJS of Parma, Inc., et al., ) | **Memorandum of Opinion and Order** |
| ) | |
| Defendants. ) | |

**INTRODUCTION**

This matter is before the Court upon Defendants' Motion for Judgment on the Pleadings (Doc. 21). This case arises under the Fair Labor Standards Act ("FLSA"). For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

**FACTS**

The following facts are taken from Plaintiffs' Amended Complaint. Defendants PJS of Parma, Inc. and Lorraine Stancato (collectively, "defendants") own and operate Stancato's Italian Restaurant, which maintains a dining room and also engages in off-site catering. Plaintiffs worked for defendants as servers in their dining and banquet rooms and at off-site catering events.

According to plaintiffs, prior to January 26, 2014, defendants paid their servers working in their banquet rooms and at off-site catering events ("Banquet Servers") less than the minimum wage. Defendants then added an additional sum to the Banquet Servers paychecks as "Banquet Tips" to bring their total pay to a fixed sum, for example, $10.00 per hour. Plaintiffs additionally allege that defendants charged banquet customers a mandatory gratuity. When customers inquired about the charge, defendants told the Banquet Servers to tell customers that the charge covered gratuity. Plaintiffs claim, however, that the Banquet Servers did not receive the entire mandatory gratuity or additional tips left by the customer and that defendants engaged in tip pooling and sharing arrangements by requiring the Banquet Servers to share a percentage of their tips with the house or with employees who do not regularly receive tips.

Plaintiffs acknowledge that defendants ceased applying a tip credit to the Banquet Servers' wages as of January 24, 2014. But they allege that Defendants continued to charge a mandatory gratuity to banquet customers and continued to require the Banquet Servers to tell customers that the charge covered gratuity. Plaintiffs allege that customers regularly left additional tips separate from the mandatory gratuity and that defendants would keep the additional tips for themselves or subject the additional tips to tip pooling. Finally, plaintiffs allege that whenever defendants considered an additional tip to be excessive, they attempted to convince customers to lower the amount of the tip. Defendants would then inform the Banquet Servers that the customers had changed their minds about leaving the tip, but, in reality, defendants retained the tips.

Plaintiffs bring four claims in their Amended Complaint. Count I is a claim for failure to pay minimum wages under the FLSA and Ohio law; Count II is a claim for conversion; Count III

is a claim for unjust enrichment; and Count IV is a claim for tortious interference with business relations.[1] Defendants now move for judgment on the pleadings with respect to plaintiffs' state law claims. Plaintiffs oppose the motion.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(c) provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Where a motion for judgment on the pleadings is based on the argument that the complaint fails to state claim upon which relief may be granted, it is judged under the same standard of review as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987).

The allegations of the complaint must be taken as true and construed liberally in favor of the non-moving party. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). To survive a motion for judgment on the pleadings, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Assn. of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545, 548 (6th Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). Thus, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"In practice, a. . .complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford*

---

[1] Plaintiffs moved for conditional certification under the FLSA with respect to Count One, which this Court granted. (*See* Doc. 24).

*Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)). Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal review. *Fingers v. Jackson-Madison County General Hospital District,* No. 95-5903, 1996 WL 678233 (6th Cir. Nov. 21, 1996).

## ANALYSIS

### 1. Conversion

In Count II, plaintiffs allege that defendants wrongfully converted money belonging to the Banquet Servers by keeping the extra tips that customers left in addition to the mandatory gratuity that defendants charged them on their bills. Defendants argue that the conversion claim must be dismissed because plaintiffs cannot identify the specific money that forms the basis of the conversion claim as required by Ohio law. The Court agrees.

This Court has previously recognized that "[i]n [Ohio], an action for conversion of money will only lie 'if identification is possible and there is an obligation to deliver the specific money in question.'" *Prim Securities, Inc. v. McCarthy*, 2006 WL 2334836 (N.D. Ohio Aug. 10, 2006) (granting summary judgment on plaintiff's conversion claim for money) (quoting *Haul Transp. of Va., Inc. v. Morgan*, CA 14859, 1995 WL 328995 at *3 (Ohio Ct. App. June 2, 1995)). As the *Haul* court explained:

> An action alleging conversion of cash lies only where the money involved is "earmarked" or specific money capable of identification, *e.g.,* money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum.

*Haul*, 1995 WL 328995 at *3 (quoting *Gray v. Liberty Nat. Life Ins. Co.,* 623 So. 2d 1156, 1160 (Ala. 1993)).

In *Edwards v. Prime, Inc.*, the Eleventh Circuit dismissed a claim for conversion in a situation similar to the one before this Court. 602 F.3d 1276 (11th Cir. 2010). There, former restaurant employees brought a conversion claim against the owner of the restaurant, arguing that he unlawfully kept tips meant for them. The plaintiffs alleged that the defendant "converted specific and identifiable amounts of money" and that "the amounts taken [were] and [are] identified by, calculated and based on tips and gratuities paid to servers." *Id.* at 1304. Applying Alabama law–which is identical to Ohio law–the court found that such allegations were insufficient to state a claim because "an action for the conversion of money requires that the money itself, not just the amount of it, ...be specific and capable of identification." The basis of the plaintiffs' claim was that they "wante[ed] their tips returned.." *Id.* at 305. But, as the court noted, "it would be implausible to suggest, and they have not alleged, that [defendants] have those particular tips stored in a bag somewhere, much less segregated in a fashion that would permit matching them up to each individual plaintiff." *Id.* The court further rejected the plaintiffs' argument that the money tips had been "earmarked" because the servers had to fill out tip reports: "[Plaintiffs'] argument confuses the method by which the amount was calculated with the requirement that the money itself be specific and identifiable." *Id.*

Here, plaintiffs argue that their conversion claim survives because they have pled that "Defendants had an obligation to segregate, keep intact, and deliver to Plaintiffs ... the specific money from the ... tips and gratuities" and that the tips and gratuities "w[ere] money that was either earmarked or is specific money capable of identification." Am. Compl. ¶¶ 124, 128. In ruling on a motion for judgment on the pleadings, however, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqubal*, 556 U.S. 662, 678

5

(2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 664. Plaintiffs' bare legal conclusions are insufficient to state a claim for conversion. Although they argue that defendants were *obligated* to segregate and keep intact the specific money from tips that plaintiffs received, plaintiffs have not alleged facts to support that they actually did so. For example, plaintiffs have not alleged that the money was stored in a bag or kept in a way where specific tips could be matched with specific Banquet Servers. Moreover, plaintiffs' allegations that defendants required the Banquet Servers to participate in a "tip pool" and that defendants retained some of the tips themselves belie their allegation that the money at issue is identifiable. Similarly, while plaintiffs allege that the money was "earmarked," no factual allegations support this. At most, plaintiffs would be able to show that the Banquet Servers are entitled to a "certain sum," but not the specific money that forms the basis of this claim. Under Ohio law, this is insufficient to state a claim for conversion. *See Haul*, 1995 WL 328995 at *3. Thus, defendants' Motion for Judgment on the Pleadings is granted with respect to Count II.

    **2.**    **Tortious interference**

In Count IV, plaintiffs allege that defendants tortiously interfered with the Banquet Servers' business relationship with customers by dissuading customers from leaving additional tips or convincing them to leave substantially lower tips than the customer intended. Defendants move to dismiss the tortious interference claim for two reasons: (1) plaintiffs do not have a business relationship with defendants' guests and (2) defendants were an essential party to the business relationship that plaintiffs allege existed between the Banquet Servers and the banquet customers. As discussed below, the Court agrees that defendants were not a third-party to the

relationship that plaintiffs allege existed between them and defendants' customers.

To state a claim for tortious interference with business relations, a plaintiff must allege: (1) a business relationship; (2) the tortfeasor's knowledge of the relationship; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages. *Dolan v. Glouster*, 173 Ohio App. 3d 617, 630 (Ohio Ct. App. 2007). Moreover, "[i]t is axiomatic that the wrongdoer must be a non-party to the contract." *Castle Hill Holdings, LLC v. Al Hut, Inc.*, (citing *Kenty v. Transamerica Premium Ins.*, 72 Ohio St. 3d 415, 418 (1995); *see also Dolan v. Glouster*, 173 Ohio App. 3d 617, 630 (Ohio Ct. App. 2007) ("A person cannot tortiously interfere with his own business relationship.").

Here, there is no dispute that defendants had a direct economic interest in their relationship with their own customers. Nor can there be any dispute that defendants were an essential party to the allegedly injured business relationship between the Banquet Servers and the banquet customers–without defendants, the Banquet Servers would have had no relationship at all with the customers. Thus, plaintiffs' conclusory allegation that the Banquet Servers had an "entirely separate and distinct business relationship as between Defendants and the customers" cannot save their claim. (Am. Compl. ¶ 141). In dismissing a similar tortious interference claim by the former restaurant employees in *Edwards*, the Eleventh Circuit explained:

> Because a restaurant's proceeds depend on its patrons and its costs depend heavily on its payroll, the defendants had an obvious economic interest in ... the employee-patron relationship .... [Defendants] were essential parties to the business relationship.... They were involved in creating th[e] relationship[]; without them the plaintiffs would have had no relationship with the patrons of the restaurant.

*Edwards*, 602 F.3d at 1302-03.

Thus, because defendants were not a third-party to the alleged business relationship

7

between the Banquet Servers and the banquet customers, Count IV is dismissed.[2]

### 3. Unjust enrichment

#### a. Preemption

Defendants move to dismiss the 2012-2014 Banquet Servers' claim for unjust enrichment because it is duplicative of, and dependent upon, their FLSA claim. They argue that the unjust enrichment claim "is based on the same underlying theory as Plaintiffs' FLSA claim–that Defendants engaged in unlawful tipping practices ...and failed to pay Plaintiffs tips that Plaintiffs assert belong to them." They maintain that plaintiffs cannot establish their unjust enrichment claim without relying on a server's rights to retain tips, a right that arises solely from the FLSA. For the following reasons, the Court finds that the unjust enrichment claim is not preempted.

A federal statute can preempt state law in three ways: (1) express preemption; (2) implied preemption, which occurs when Congress occupies the field so pervasively that it leaves no

---

[2] At least one court has held that no business relationship exists at all between a server and a customer:

> "Plaintiffs simply had no business relationship with Defendant's customers. The guests of the restaurant were not Plaintiffs' customers, they were Defendant's customers. Defendant owned and operated its restaurant to serve its customers. Defendants hired Plaintiffs to serve those customers subject to Defendant's direction and control ... Plaintiffs, by doing their jobs, did not have a business relationship with any customer. Having no business relationship with Defendant's customers, Plaintiffs cannot establish their claim." *Barquin v. Monty's Sunset, L.L.C.*, 975 F. Supp. 2d 1309 (S. D. Fla. 2013). Defendants unquestionably were an essential party to the business relationship at issue, so the Court need not go so far as to hold that the Banquet Servers had no relationship at all with the customers. The Court notes, however, that the court's reasoning in *Barquin* supports the conclusion that defendants were not a third-party to the relationship at issue.

room for the states to supplement it; and (3) conflict preemption, which occurs when the federal law is in "irreconcilable conflict" with state law. *See Sardisco v. Direct Import Home Decor, Inc.*, 2014 WL 3014369 at * 3 (N.D. Ohio July 2, 2014) (citations omitted). As courts have recognized, express and implied preemption are inapplicable to FLSA; thus, the question is whether the unjust enrichment claim brought on behalf of the 2012-2014 Banquet Servers is barred by conflict preemption. *See Woodall v. DSI Renal, Inc.*, 2012 WL 1038626 at * 4 (citing *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 n.10 (4th Cir. 2007). An actual conflict arises when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Hillsborough Cnty. v. Automated Med. Labs*, *Inc.*, 471 U.S. 701, 721 (1985).

This Court recently addressed the issue of FLSA preemption in *Sardisco*. There, the Court noted that "the question of whether the FLSA actually preempts any state law causes of action is unsettled. The Sixth Circuit has not yet spoken on whether the FLSA can preempt state law claims and there are divergent answers from the other Courts of Appeals." 2014 WL 3014369 at 3 (citing cases). In deciding whether FLSA preempted the plaintiff's fraudulent inducement claim[3], this Court noted that the FLSA contains a savings clause that expressly permits states to fashion their own hour and wage statutes. *Id.* Although the statute was not applicable to the plaintiff's claim, the Court found that it evinced Congress's intent that the FLSA "should be seen to supplement not supplant state law." *Id.* (citing 29 U.S.C. § 217(a)).

---

[3] The plaintiff alleged that defendants fraudulently induced plaintiff to move to Cleveland and accept employment with the defendants by promising him that he would be paid substantially more than they actually paid him. *Sardisco*, 2014 WL 3014369 at *1.

9

Ultimately, the Court held that FLSA did not preempt the fraudulent inducement claim at issue, finding that while the plaintiff's FLSA claim and his fraudulent inducement claim shared many of the same facts, "the elements of the claims are decidedly different and th[e] claim is not duplicative of a FLSA [claim]." *Id.*

This Court's conclusion in *Sardisco* is consistent with the decisions of the majority of district courts in the Sixth Circuit who have analyzed this issue. *See, e.g., Woodall*, 2012 WL 1038626 at * 4 (noting that "[d]istrict courts in this circuit are ... divided [on the issue of whether FLSA preempts state law claims], although the balance of authority weighs against preemption" and holding that plaintiff's breach of contract and unjust enrichment claims were not preempted); *Monahan v. Smyth Automotive, Inc.*, 2011 WL 379129 (S.D. Ohio Feb. 2, 2011) ("unjust enrichment, while possibly based on many of the same facts, is not a claim duplicative of an FLSA claim...a claim for unjust enrichment simply does not interfere with or create any obstacles to the FLSA scheme, and the two theories are not in conflict"); *Carter v. Jackson-Madison County Hosp. Dist.*, 2011 WL 1256625 *11 (W.D. Tenn. March 31, 2011) (unjust enrichment claim not preempted).

Like these other courts, this Court finds that the plaintiffs' claim for unjust enrichment is not an obstacle to the FLSA scheme and that it is therefore not in conflict with the statute. Liability under FLSA is available when a plaintiff can establish an employer-employee relationship, that the plaintiff was engaged in FLSA protected activities, and that the defendant did not pay the required minimum wage or overtime pay. *Sardisco*, 2014 WL 3014369 at *3. In contrast, to state a claim for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention

of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *Filo v. Liberato*, 987 N.E.2d 707 (Ohio Ct. App. 2013).[4]

Here, in support of their unjust enrichment claim, plaintiffs allege that they conferred a benefit upon defendants with defendants' knowledge by giving excellent service to the customers, which caused those customers to leave additional tips and gratuities and created repeat business for Defendants. They further allege that "[t]here was a clear understanding between Defendants, Plaintiffs, the members of the class, and the customers that the additional tips and gratuities ... belonged solely to Plaintiffs and the members of the Class, and there was no arrangement by which Plaintiffs and the members of the Class agreed to turn over those tips and gratuities to Defendants." Finally, they allege that, because plaintiffs were the intended recipients of the additional tips and gratuities, defendants' retention of the additional tips and gratuities is unjust. These allegations demonstrate that plaintiffs' unjust enrichment claim is

---

[4] Defendants argue that *Sardisco* and *Woodall* are inapplicable because they did not involve tipping:

> "Unlike the Plaintiffs in this case, the collective plaintiffs in *Sardisco* did not allege that they were tipped employees, that they ever received tips from customers, or that they were even paid with a tip credit. Thus, neither the nature of the collective plaintiffs' FLSA claims nor Mr. Sardisco's state law claims are similar in any respect to the nature of the FLSA or Common Law Claims asserted by the 2012-2014 Banquet Servers in this case. As a result, the *Sardisco* Court's analysis as to whether Mr. Sardisco's fraudulent inducement claim was preempted by his FLSA claim...is irrelevant to the preemption issue facing this Court." (Defs.' Reply Br. at 6); (*see also id.* at 7) (raising similar point with respect to *Woodall*). Defendants, though, have articulated no reason *why* the preemption analysis should differ simply because this case involves tipping. Their conclusory argument is insufficient to convince the Court that *Sardisco* is inapplicable.

neither duplicative of, nor dependent on, their FLSA claim. While the unjust enrichment claim may be based on many of the same facts as their FLSA claim, the two do not share the same elements or necessarily require the same relief. Thus, plaintiffs may assert both claims.

Moreover, under Rule 8, "a party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). As several courts have held, a finding of preemption at the pleading stage would run counter to Rule 8. *See, e.g., Monahan*, 2011 WL 379129 at *5. At this stage of the litigation, the Court need not determine whether there is, in fact, a viable FLSA claim that might destroy a claim for equitable relief.[5] *Id.* Rather, at this stage, plaintiffs' only obligation is to allege sufficient facts "to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1974. Plaintiffs' allegations on their unjust enrichment claim are sufficient to show that they have a plausible claim for relief.

For these reasons, the Court finds that plaintiffs' unjust enrichment claim on behalf of the 2012-2014 Banquet Servers is not preempted.

### b. Merits

Finally, defendants argue that, to the extent the unjust enrichment claim is asserted on behalf of Banquet Servers employed after January 2014, the claim fails because plaintiffs cannot establish that defendants' retention of the service charges or tips was "unjust." Defendants assert that these Banquet Servers were not paid with a tip credit, so, under FLSA, defendants have the right to retain the entire amount of any tip from Stancato's banquet customers. As support,

---

[5] Defendants obviously do not concede at this point in the litigation that they violated FLSA, and in fact, denied in their Answer that they paid the pre-January 2014 Banquet Servers at the "tipped employee minimum wage" and that they used a tip credit for the Banquet Servers' wages.

12

defendants cite to *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 581 (9th Cir. 2010), where the Ninth Circuit rejected the employees' argument that they were entitled to all of their tips even though the defendants did not use a tip credit. Because the plaintiffs were paid an hourly wage of at least the minimum wage, they could not demonstrate a legally cognizable ownership right in the tips that they alleged were unlawfully retained or converted by their employer. *Id.*

Plaintiffs, however, argue that the tips are the property of the Banquet Servers, whether or not Defendants used a tip credit. In support, they cite *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 388 (1942). In *Williams,* the Supreme Court explained that, "[i]n businesses where tipping is customary, the tips, in the absence of an explicit contrary understanding, belong to the recipient." *Id.* at 397. The Court noted, though, that "[w]here ... an agreement is made by which the employee agrees to turn over the tips to the employer, in the absence of statutory interference, no reason is perceived for its invalidity." Plaintiffs argue that, under *Williams*, the question of to whom the tips belonged is one of fact and that the allegation that the post-January 2014 Banquet Servers were the intended recipients of the tips and that there was no agreement to the contrary with defendants are sufficient to survive dismissal. (*See* Defs.' Br. at 9-10).

Plaintiffs further note that defendants' position is contrary to a Department of Labor regulation, issued in 2011, stating that tips are the property of the employee, even when the employer has not taken a tip credit:

> Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA. The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.

29 C.F.R. § 531.52.

13

After defendants filed their initial motion, the Ninth Circuit issued a decision holding that 29 C.F.R. § 531.52 was a valid exercise of the Department of Labor's authority under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See Oregon Restaurant and Lodging Assoc. v. Perez*, 2016 WL 706678 (9th Cir. Feb. 23, 2016).[6] In doing so, the Court recognized that *Cumbie's* analysis was based on statutory silence–at the time *Cumbie* was decided, neither the FLSA nor the Department of Labor's regulations interpreting the statute regulated the tip pooling practices of employers who do not take a tip credit. *Id.* at *8.

In their reply brief, defendants cite several district court opinions outside of the Ninth Circuit that have held 29 C.F.R. § 531.52 to be invalid under *Chevron* and urge this Court to follow these opinions. Not until their reply brief did defendants fully address the issue of 29 C.F.R. § 531.52's validity, so plaintiffs have not had an opportunity to respond to this issue. Moreover, while the district court opinions that defendants cite in their reply brief were not affected by the Ninth Circuit's decision in *Oregon Restaurant and Lodging*, the Court notes that at least some of these opinions expressly relied on *Cumbie*. Because both parties have not fully briefed this complex issue and because of the recent flux in the case law, the Court declines at this time to reach a decision on the validity of 29 C.F.R. § 531.52 under *Chevron*. Instead, the Court will accept further briefing on this question. After the parties have fully briefed the issue, the Court will render its decision on whether plaintiffs have stated a claim for unjust enrichment on behalf of the post-January 2014 Banquet Servers.

---

[6] Defendants acknowledge the Ninth Circuit's decision in their reply brief.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (Doc. 21) is GRANTED IN PART AND DENIED IN PART. Plaintiffs' claims for conversion and tortious interference are dismissed. Defendants' motion is denied insofar as it is directed at plaintiffs' claim for unjust enrichment on behalf of the 2012-2014 Banquet Servers. Finally, the Court will accept further briefing regarding the validity of 29 C.F.R. § 531.52 insofar as it pertains to the unjust enrichment claim on behalf of the post-January 2014 Banquet Servers. Plaintiffs have ten days from the date of this Order to respond to defendants' arguments that 29 C.F.R. § 531.52 is invalid. Defendants will have seven days thereafter to file a reply.

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/4/16