UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Carol Carter, et al., | CASE NO. 1:15 CV 1545 |
| Plaintiffs, | JUDGE PATRICIA A. GAUGHAN |
| vs. | |
| PJS of Parma, Inc., et al., | **Memorandum of Opinion and Order** |
| Defendants. | |

**INTRODUCTION**

This matter is before the Court upon Plaintiffs' Motion for Class Certification (Doc. 15). Plaintiffs' Amended Complaint alleges claims under the Fair Labor Standards Act and state common law for conversion, tortious interference with business relations, and unjust enrichment. On December 17, 2015, this Court granted plaintiffs' motion for conditional certification on their FLSA claim. Plaintiffs originally moved for class certification on all of their state law claims; however, in an order dated April 4, 2016, this Court dismissed plaintiffs' claims for conversion and tortious interference with business relations.[1] Thus, the only issue now before the Court is

---

[1] Familiarity with the December 17 and April 4 orders is presumed.

whether class certification is appropriate on plaintiffs' unjust enrichment claim. For the reasons that follow, the Court finds that it is not; therefore, plaintiffs' motion is DENIED.

**FACTS**

Defendants PJS of Parma, Inc. and Lorraine Stancato (collectively, "defendants") own and operate Stancato's Italian Restaurant, which maintains a dining room and also engages in off-site catering. Defendants employ dining room servers to work the lunch and dinner shifts in the dining room and banquet servers to work banquets and off-site catering events.

Customers who want to schedule a banquet coordinate the event with defendants' banquet manager or a member of the banquet staff. (Smelko Dec. ¶ 7). After the banquet, the customer receives a check that contains charges for the food and drinks as well as a banquet service charge. (*Id.* ¶ 9). According to defendants, the banquet service charge is a pre-determined percentage of the banquet bill and covers (or reduces) defendants' costs associated with banquet coordination, room preparation and maintenance, and the hourly wages of the banquet servers. (*Id.* ¶ 10). Defendants notify customers of the banquet service charge during the planning of the event; the holder presenting the banquet check also contains a notice of the charge. (*Id.* ¶ 11). The charge is identified on the banquet check as an above-the-line charge, upon which tax is calculated. (*Id.* ¶ 12). According to defendants, the banquet service charge is not a tip or gratuity and the proceeds of the charge are included in defendants' gross receipts. (*Id.* ¶ 13).

Banquet customers have the option of leaving a tip in addition to the banquet service charge. (*Id.* ¶ 14).[2] Some banquet customers leave additional tips while others do not. (*Id.* ¶ 15). Defendants maintain that when a banquet customer leaves a cash tip, it is split equally among the

---

[2] Additional tips are not subject to sales tax. (*Id.*).

2

banquet servers who worked the banquet and that servers receive the tip after the banquet. (*Id.* ¶¶ 16-17). If the tip is left on a credit card, defendants process it through their point of sale system. (*Id.* ¶ 18). Before August of 2015, banquet servers could pick up their credit card tips the day after the banquet. As of August 2015, servers receive credit card tips on their paychecks. (*Id.*). Plaintiffs dispute that banquet servers received all of the additional tips left by the customer and allege that defendants kept a portion of the tips for themselves.[3] (Am. Compl. ¶¶ 134-138). Plaintiffs also claim that defendants' policy was that newly hired banquet servers were not allowed to receive additional tips for the first five banquet events that they worked. (*Id.* ¶ 88).[4]

Plaintiffs now move to certify a class of "all Banquet Servers who worked for Defendants for any period of time since August 5, 2011" on their unjust enrichment claim. In this claim, plaintiffs allege that banquet servers conferred a benefit on defendants with defendants' knowledge "by giving excellent service to the customers, causing those customers to leave additional tips and gratuities for Plaintiffs and the members of the Class and creating repeat business for Defendants." (*Id.* ¶ 134). Plaintiffs allege that members of the class were the intended recipients of the additional tips and gratuities and that defendants were unjustly enriched when they retained the tips. (*Id.* ¶¶ 136-137). Defendants oppose plaintiffs' motion; plaintiffs did not file a reply in response to defendants' brief in opposition.

---

[3] Plaintiffs allege that the banquet service charge is actually a mandatory gratuity and that they did not receive the entire charge. Their unjust enrichment claim, however, is not based on the banquet service charge; rather, it is based solely on their assertion that defendants retained the tips that customers gave in addition to the charge. (Am. Compl. ¶¶ 134-138).

[4] Defendants dispute that they treated new hires differently and state that all banquet servers shared in the tips. (Smelko Dec. ¶ 16).

**RULE 23**

The party seeking to maintain a class action bears the burden of "affirmatively demonstrat[ing]" compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551-2552 (2011). The rule establishes four prerequisites to class certification: the class must be so numerous that "joinder of all members is impracticable;" there must be "questions of law or fact common to the class;" the claims of the representative party must be "typical" of those of the class; and the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The plaintiff must also show that the class is maintainable under Rule 23(b). Here, plaintiff asserts that a class action is appropriate under Rule 23(b)(3), which requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action is a superior method of resolving the claim.

A court's analysis of whether the Rule 23 requirements have been met should be "rigorous." *Davis v. Cintas Corp.*, 717 F.3d 476, 483 (6th Cir. 2013). Rule 23 "does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Rather, the party seeking certification must "be prepared to prove that [the Rule 23(a) requirements] are *in fact*" met and must satisfy the Rule 23(b) requirement through "evidentiary proof." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1431 (2013) (quoting *Dukes*, 564 U.S. 338). The Supreme Court has consistently noted that it "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question" and that such an analysis will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350-51.

**1. Adequacy of class definition**

Defendants first argue that plaintiffs' class definition is inadequate. In determining whether a class has been properly defined, a court considers whether the class definition specifies a "particular group that was harmed during a particular time frame, in a particular location, in a particular way"; and whether the definition facilitates the court's "ability to ascertain its members in some objective manner." *Givens v. Van Devere, Inc.*, 2012 WL 4092738 at * 4-5 (N.D. Ohio Sept. 17, 2012). If a court must make a determination of the merits of individual claims to decide if a particular individual is a member of the class, then the class definition is inadequate. *Id.* A class definition also fails as overbroad if it "would include members who have not suffered harm at the hands of the defendant and are not at risk to suffer such harm." *Id.* (citing *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001).

Here, the class definition is inadequate because the Court would have to make determinations as to the merits of each of the putative class members' claims to determine whether he or she is a member of the class. Moreover, the class very well could include members who never suffered the harm that plaintiffs complain of. Plaintiffs' unjust enrichment claim is based on their allegation that servers conferred a benefit on defendants by giving excellent service to the customers, which caused the customers to leave additional tips for the servers and created repeat business for defendants. But, as defendants point out, the class–which is comprised of all banquet servers who worked for the defendants since August 5, 2011–could include servers who offered poor service, who never worked at a banquet where a customer left a tip, who never worked at a banquet where a customer left a tip for the server's good service rather than another reason, or who never received a tip only to have the defendants retain the tip.

The class definition thus fails because it is overbroad and it does not facilitate the court's ability to ascertain the members of the class.

### 2. Numerosity

To meet the numerosity requirement, plaintiffs must show that "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Although there is no "strict numerical test for determining impracticability of joinder," the Sixth Circuit has held that a class of 35 members can be sufficient to satisfy the requirement. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996). While plaintiffs need not plead or prove the exact number of class members, they cannot rely on speculation to establish numerosity. *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005). *See also* 7A Charles Alan Wright & Arthur R. Miller, Mary Kay Kane, Federal Practice And Procedure § 1762 (3d Ed.2001) (observing that the party seeking class certification "bear[s] the burden of showing impracticability and mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)").

Plaintiffs provide two declarations from former banquet servers to meet their burden–one from Carol Carter, who worked for defendants from September 11, 2014 through April 9, 2015, and one from Brenda DeLuca, who worked for defendants from July 19, 2010 through October 19, 2014. Carter states that she worked with at least 15 other banquet servers during her employment and that she also trained at least seven other newly-hired banquet servers. DeLuca states that she worked with 20 other banquet servers who worked nighttime and banquet events and that this number does not include the servers who worked during daytime banquet events. She further states that there was an extremely high turnover rate of banquet servers.

Although these declarations provide some idea of the size of the class, plaintiffs still

essentially rely on speculation to meet their burden to prove the numerosity requirement. The declarations do not address any potential overlap with respect to the banquet servers with whom Carter and DeLuca worked, and they do not identify the number of daytime servers during DeLuca's tenure. While turnover might have been high for servers, the Court cannot simply presume that the numerosity requirement is met because of such turnover. Finally, as defendants point out, a number of the servers who worked with Carter and DeLuca might not even be members of the class because they did not suffer any harm. For these reasons, plaintiffs cannot establish numerosity.

### 3. Commonality

A plaintiff seeking to certify a class must also show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This does not mean merely that [plaintiffs] have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350. Rather, as the Supreme Court explained in *Dukes*:

> [The class members'] claims must depend upon a common contention.... That common contention, moreover, must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.
>
> "What matters to class certification ... is not the raising of common 'questions'–even in droves–but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

*Id.* (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L. Rev. 97, 132 (2009).

In the context of unjust enrichment claims, courts have noted that the resolution of such

claims depends on individualized inquiries into the particular circumstances of each case to determine whether, without a remedy, inequity would result. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). Because of the necessity for these individualized inquiries, unjust enrichment claims are often inappropriate for class action treatment. *Id.* (reversing and remanding the district court's decision to certify a class on an unjust enrichment claim); *Russell v. Citigroup, Inc.*, 2015 WL 9424144, at *5 (denying motion for class certification on unjust enrichment claim because plaintiff failed to establish commonality).

Plaintiffs assert that the questions of law and fact common to the class are whether Defendants:

- interfered with the putative class members' tips by requiring the Banquet Servers to retrieve a manager whenever the customer left a tip that Defendants considered to be excessive, and if so, whether it was unlawful;
- interfered with the putative class members' tips by persuading customers to entirely renege on their tip or substantially reduce the amount initially left, and if so, whether it was unlawful; and
- withheld, retained, or converted, to the exclusion of the rights of class members, portions of the class members' tips by using them, for example, for cleaning expenses, and if so, whether it was unlawful.

(Pls.' Mot. for Class Cert. at 6). Plaintiffs do not submit any evidence in support of their contention that commonality exists; instead, they rely exclusively on the allegations in their Amended Complaint. In reviewing plaintiffs' allegations, particularly in light of the declaration of Kyle Smelko, defendants' kitchen operations manager, the Court finds that they are insufficient to meet their Rule 23(a)(2) requirement.

In an unjust enrichment case, proof of commonality necessarily overlaps with the merits of plaintiffs' claim because the crux of an unjust enrichment claim is whether defendants' retention of a benefit conferred by the plaintiff would be unjust *under the circumstances*.

8

Specifically, the Court will have to evaluate each class member's individual circumstances to determine whether he or she actually conferred a benefit on defendants, whether defendants appreciated that benefit, and whether it would be inequitable for defendants to retain the benefit without payment for its value.[5] The answer to these questions will depend on a number of facts, including what kind of service each banquet server provided at each banquet where he or she served, whether the customer left a tip, whether the customer left the tip because of the server's excellent service or for some other reason, and whether defendants retained the tip. Smelko's declaration shows that a classwide proceeding cannot "generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. Specifically, he avers that some customers did not leave any tip and that others revoked their tips following a banquet. In contrast to plaintiffs' allegation that defendants retained a portion of the tips, Smelko avers that tips were split equally among the servers after a banquet. Indeed, plaintiffs' own allegations show that circumstances differed among members of the class–they allege that defendants' policy was that new hires did not receive *any* tips for the first five banquets whereas other servers received at least a portion of the tips. (Am. Comp. ¶¶ 88-89). Thus, as previous courts have recognized, the many individualized inquiries inherent in plaintiffs' unjust enrichment claim preclude a finding of commonality.

Because plaintiffs' class definition is inadequate and they cannot establish numerosity or commonality, the Court need not address whether plaintiffs can meet the typicality and adequacy

---

[5] To establish their unjust enrichment claims, plaintiffs must prove three elements: (1) a benefit conferred by plaintiffs upon defendants; (2) knowledge by defendants of the benefit; and (3) retention of the benefit by defendants under circumstances where it would be unjust to do so without payment. *Filo v. Liberato*, 987 N.E.2d 707 (Ohio Ct. App. 2013).

requirements of Rule 23(a).

### 4. Rule 23(b)(3)–Predominance and Superiority

Plaintiffs seek to certify this case under Rule 23(b)(3). Class certification is only appropriate under this rule if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Supreme Court noted in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), that "[i]f anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 16, 117 S. Ct. 2231, 2246 (1997).

Initially, the Court notes that, contrary to the Supreme Court's requirement in *Comcast* that a plaintiff satisfy Rule 23(b) with "evidentiary proof," plaintiffs do not supply any evidentiary support for their contention that this case meets Rule 23(b)(3). *Comcast*, 133 S. Ct. at 1432. Moreover, for the reasons discussed above, plaintiffs simply cannot prove that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). As noted, unjust enrichment claims often require individualized analyses, so "common questions will rarely, if ever, predominate." *Vega*, 564 F.3d at 1274. "[A]ny trial of

[such a] case would require the presentation of a substantial amount of evidence specific to each of an unknown number of class members.... This reality poses serious challenges to the efficiency and manageability of a class action proceeding." *Id.* at 1278; *see also Grandalski v. Quest Diagnostics, Inc.*, 767 F.3d 175, 184 (3d Cir. 2014) (affirming denial of class certification on unjust enrichment claim because "determining membership in the class would require individualized analyses into whether each putative class member was wrongfully harmed, such that the class could not be readily ascertained"); *Westways World Travel, Inc. v. AMR Corp.*, 265 F. App'x 472, 476 (9th Cir. 2008) (affirming district court's decertification of plaintiffs' class action on unjust enrichment claim because individualized inquiries would predominate over common questions of law and fact).

In their brief in opposition to plaintiff's motion for certification, defendants identify numerous individualized questions that would have to be addressed to determine whether plaintiffs unjustly enriched defendants:

> Which banquets did any particular Banquet Server work at? What level of service was provided by the Banquet Server and was the customer impressed or satisfied with that Banquet Server's service? Did the customer leave a tip? Did the customer provide that tip due to the Banquet Server's excellent service or due to other factors (e.g. being served with excellent food)? If a variety of factors motivated the tip, what was their relative significance as to each customer, Banquet Server, and banquet? If the customer tipped, to whom did he or she intend the tip to inure: Stancato's as a whole, all Banquet Servers, a particular Banquet Server, or was it provided out of reflex? Did the Banquet Server actually receive the tip (whether intended, by the customer, for the Banquet Server or not)? And as to "repeat" customers that Plaintiffs allege to have created: if customers were "repeat" customers, was it due to the service or to the food, location, prices, and atmosphere? If a variety of factors, what was their relative significance as to each customer, Banquet Server, and banquet?

(Defs.' Br. in Opp. at 13-14). These fact-specific questions easily outnumber the common questions that plaintiffs identify and go to the equitable concerns at the heart of plaintiffs' unjust

enrichment claim. *See Russell*, 2015 WL 9424144, at *9 (finding common questions did not predominate in plaintiff's unjust enrichment claim). Managing this case as a class action would involve considerable difficulties because of the many individual fact-specific inquiries, and plaintiffs have offered no plan for efficiently addressing them. Thus, the Court finds that plaintiffs have not satisfied the predominance criterion.

Finally, plaintiffs argue that individual class members have a strong interest in maintaining this action as a class action because the damages that each would be entitled to is small such that class members may have little interest in prosecuting their claims separately. While this may be true, it is not enough to overcome the other deficiencies identified above with respect to the adequacy of the class definition, numerosity, commonality, and predominance.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Class Certification (Doc. 15) is DENIED.

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 6/20/16